UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERNEST HUNTER,

    Plaintiff,

  v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

    Defendant.

Civil Action No. 22-3552 (CKK)

**MEMORANDUM OPINION & ORDER**
(February 18, 2025)

    Plaintiff Ernest Hunter alleges in this case that his former employer, the Washington Metropolitan Transit Authority ("WMATA"), unlawfully retaliated against him for filing a complaint of discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").[1] *See* Compl., ECF No. 1, ¶¶ 51–58. WMATA has filed a [17] Motion for Summary Judgment on this claim ("Motion" or "Def.'s Mot."). ECF No. 17.

    WMATA presents two arguments in support of its Motion. First, it argues that Hunter's retaliation claim fails as a matter of law because Hunter failed to exhaust administrative remedies before filing his Complaint. Def.'s Mot. at 2–3. Second, it argues that WMATA had a nondiscriminatory and nonretaliatory reason for terminating his employment. Def.'s Mot. at 3–5. Hunter, who is proceeding *pro se*, opposes the Motion. Pl.'s Opp'n, ECF No. 18. WMATA elected not to file a reply, and the Motion is now ripe for decision.

---

[1] Hunter also alleged, in Count II of his Complaint, that WMATA violated the District of Columbia Wage Payment Collection Law, D.C. Code § 32-1301 *et seq.*, and the District of Columbia Wage Theft Prevention Act, 61 D.C. Reg. 10157 (October 3, 2014). *See* Compl., ECF No. 1, ¶¶ 59–66. Hunter later consented to the dismissal of Count II of his Complaint, which WMATA argued was barred because WMATA is an "interstate compact agency" not susceptible to suit under those laws. *See* Def.'s Partial Mot. to Dismiss, ECF No. 6; Pl.'s Resp. to Def.'s Partial Mot. to Dismiss, ECF No. 7. The Court therefore dismissed Count II. Min. Order (Apr. 25, 2023).

1

Upon consideration of the parties' submissions, the relevant legal authority, and the entire record, the Court shall **DENY IN PART** and **DENY WITHOUT PREJUDICE IN PART** WMATA's Motion and give the parties an opportunity to file renewed motions for summary judgment.

## I. BACKGROUND

Hunter worked in the Small Business Program Office of WMATA's Procurement and Materials department as a Disadvantaged Business Enterprise ("DBE") Compliance Specialist from May 2013 until October 2017, when WMATA terminated his employment. *See* Def.'s Mot. at 3; Def.'s Statement of Material Facts Not in Dispute ("S.M.F.") ECF No. 17-1, ¶¶ 1, 3.

Hunter's union, Office and Professional Employees International Union Local 2, filed a grievance regarding his October 2017 termination. *See* Pl.'s Ex. 1, ECF No. 19-1; S.M.F. ¶ 3. After the conclusion of arbitration over that grievance and a ruling in Hunter's favor, an arbitration board concluded that he should be offered "reinstatement within the bargaining unit to the position of Small Business Analyst or, if mutually agreed to by the parties[,] another position within the bargaining unit." Pl.'s Ex. 1, ECF No. 19-1, at 2.

In May 2020, WMATA placed Hunter into a Contract Administrator II ("CA II") position in its Office of Procurement and Materials ("PRMT"). *See* S.M.F. ¶ 3. The CA II position requires a "Bachelor's Degree in Business Administration, Engineering, or a related field." *See* Def.'s Ex. 1, ECF No. 17-3, at 4. However, the job description provides that "[i]n lieu of a Bachelor's Degree," a combination of a high school diploma or GED and relevant work experience "may be considered." *Id.* The job description further provides that the relevant work experience for a person without a qualifying college degree must include "an additional four (4) years of experience in developing and administering requests for proposals and/or quotations, specifications, scope of work, and different types of contracts and agreements." *Id.* Finally, the job description provides

2

that "[c]ertification from an accredited procurement program . . . must be obtained within two (2) years of hire date and maintained thereafter." *Id.*; *see* S.M.F. ¶ 5. This certification requirement was added in September 2018. S.M.F. ¶ 5; *see* Def.'s Ex. 1, ECF No. 17-3, at 1, 5.

WMATA had evaluated Hunter's qualifications to hold the CA II position at least once before, in September 2017; at that time, it found Hunter not qualified for the position. Pl.'s Ex. 4, ECF No. 19-1 at 10. Hunter alleged both in the Charge of Discrimination he filed with the EEOC and in his complaint in this case that he still lacked the "prerequisite experience" for the CA II position at the time he was placed in the position in 2020. *See* Pl.'s Charge of Discrimination, ECF No. 17-8 at 14–23; Compl. ¶ 43.

On March 26, 2021, Hunter filed a grievance alleging that in the 10 months since his reinstatement in May 2020, his managers had not been assigning him work, had failed to provide him a mid-year review, and had improperly referred him to WMATA's Employee Assistance Program ("EAP") without his request or consent. *See* Pl.'s Ex. 6, ECF No. 19-1, at 1. About two weeks later, on April 7, 2021, Hunter filed a formal discrimination complaint with WMATA's Office of Equal Employment Opportunity, in which he alleged that WMATA took these actions in retaliation for his prior complaint to the Equal Employment Opportunity Commission ("EEOC"). *See id.* at 3–4.

On April 15, 2021, eight days after Hunter filed his discrimination complaint with WMATA's Office of Equal Employment Opportunity, a WMATA executive named T. Suzette Moore sent a memorandum to "All PRMT Contracting Personnel," including Hunter, describing the certification requirement that applied to Hunter's position and several other positions in the same department. *See* Def.'s Ex. 2., ECF No. 17-4. This memorandum stated that individuals in covered positions must "obtain . . . certification within two (2) years of hire as established in their

3

associated job description." *Id.* at 1.  It also stated that "[i]ndividuals who fail to obtain and maintain certification will be subject to termination." *Id.* at 2.  Moore later sent a memo directly to Hunter on June 1, 2021, restating the policy requirement and advising him that his position was "an applicable position that requires certification/recertification" and that he would be required to obtain certification by May 25, 2022, in order to maintain his position.  Def.'s Ex. 3, ECF No. 17-5.  Finally, on March 14, 2022, Moore emailed Hunter and reminded him that he needed to obtain the required certification by May 25, 2022, or he would be terminated, attaching a copy of the earlier policy memorandum to her email.  *See* Def.'s Ex. 6, ECF No. 17-6; S.M.F. ¶ 9.

Hunter did not become certified, and WMATA terminated his employment on October 7, 2022.  *See* Def.'s Ex. 5, ECF No. 17-7.

Hunter filed this action in November 2022, alleging that WMATA had unlawfully retaliated against him for complaining about workplace discrimination.  *See generally* Compl., ECF No. 1, ¶¶ 51–58.  In his Complaint, Hunter contends that WMATA set him up to fail by placing him in the CA II position, despite knowing that he lacked the requisite certification and experience.  *See* Compl. ¶ 57.  He contends he was never assigned work in the new position, *id.* ¶ 41, that he filed a formal complaint about his lack of work, *id.* ¶ 42, and that Moore only informed him about the certification requirement after he filed that complaint, *id.* ¶ 43.

Hunter later filed a Charge of Discrimination with the EEOC in March 2023 related to the same allegedly retaliatory conduct.  *See* Pl.'s Charge of Discrimination, ECF No. 17-8 at 14–23.  EEOC issued a "Right to Sue" letter to Hunter in May 2023, notifying him that EEOC would not proceed further with its investigation of his March 2023 Charge of Discrimination.  *See* Determination and Notice of Rights, ECF No. 17-8 at 36.

4

WMATA then filed the pending Motion for Summary Judgment in January 2024. *See* Def.'s Mot., ECF No. 17.

## II. LEGAL STANDARD

Summary judgment should be granted to the movant if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)); *see* Fed. R. Civ. P. 56(c)(1) (opposing party must demonstrate genuine issue by "citing to particular parts of materials in record, including depositions, documents, electronically stored information, affidavits or declarations, [or] stipulations"). The non-moving party must identify a genuine issue of material fact. "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Id.* at 255.

The district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the

5

opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

WMATA first argues that Hunter's retaliation claim fails because he failed to exhaust administrative remedies. Def.'s Mot. at 2–3. This argument is unsuccessful.

Generally, a plaintiff must exhaust administrative remedies by filing a charge of discrimination with the EEOC before bringing a civil suit under Title VII or the ADEA. *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973); *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 555 n.4, (1977); *Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir.1998) ("Before . . . suing under either the ADEA or Title VII, an aggrieved party must exhaust his administrative remedies...."); *McKeithan v. Boarman*, 803 F. Supp. 2d 63, n.3 (D.D.C. 2011); see also 29 U.S.C. § 626(d)(1); 42 U.S.C. § 2000e–5(f)(1). "The purpose of the [administrative exhaustion] doctrine is to afford the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts." *Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011) (*quoting Wilson v. Pena*, 79 F.3d 154, 165 (D.C. Cir. 1996)). Ordinarily, as proof of such exhaustion of administrative remedies, a plaintiff receives a right-to-sue letter from the EEOC, indicating either the EEOC's decision not to pursue the case or its inability to bring a civil action within 180 days of the plaintiff's EEOC charge. 42 U.S.C. § 2000e–5(f)(1);

6

*see also Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) ("Only after the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a civil action within the requisite time period can that person bring a civil action herself."); *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1366 (D.C. Cir. 1998); *Adams v. District of Columbia*, 740 F. Supp. 2d 173, 186 (D.D.C. 2010). Thus, receipt of a notice of right-to-sue letter is a condition precedent to the initiation of a Title VII or ADEA action in court. *See Williams v. Wash. Metro. Area Transit Auth.*, 721 F.2d 1412, 1418 n. 12 (D.C. Cir. 1983); *Peters v. D.C.,* 873 F. Supp. 2d 158, 180 (D.D.C. 2012); *Bondy v. Humana, Inc.*, No. 95–456, 1996 U.S. Dist. LEXIS 10035, at *10 (D.D.C.1996); *see also Tlush v. Mfrs. Res. Ctr.*, 315 F. Supp. 2d 650, 655 (E.D. Pa. 2002) (receipt of right-to-sue letter from the EEOC is a condition precedent to filing a Title VII claim).

Here, WMATA seeks summary judgment on the ground that the condition precedent was not met because Hunter filed this action before receiving the "Right to Sue" letter. Def.'s Mot. at 2–3.

WMATA is correct that Hunter originally filed this action prematurely: he filed his Complaint on November 21, 2022, the same day as his initial inquiry with the EEOC regarding the facts and allegations set out in this lawsuit. *See* Compl.; Def.'s Ex. 7, ECF No. 17-8, at 17. Hunter later filed a Charge of Discrimination with the EEOC on March 3, 2023. Pl.'s Charge of Discrimination, ECF No. 17-8 at 14–23.

However, Hunter received a "Right to Sue" letter from the EEOC on May 22, 2023, well before WMATA filed the pending Motion for Summary Judgment, curing the defect resulting from his premature filing. *See* Def.'s Ex. 7, ECF No. 17-8, at 36–37; Pl.'s Ex. 8, ECF No. 19-1 at 17. And it is well established that "the defect of a prematurely filed [Title VII] lawsuit may be excused

7

when it is cured by the issuance of a right to sue letter while the action is pending." *Cruz–Packer v. District of Columbia,* 539 F. Supp. 2d 181, 190 (D.D.C. 2008) ("Cruz–Packer's right to sue letter was issued while this case was pending, thus her initial defect has been cured. Since the defect will be excused, the District is not entitled to judgment on these claims as a matter of law.") (citing *Williams,* 721 F.2d at 1418 n.12). WMATA's exhaustion argument therefore fails. *See Fennell v. AARP*, 770 F. Supp. 2d 118, 126 (D.D.C. 2011) (motion to dismiss for failure to exhaust administrative remedies denied where plaintiff received EEOC right-to-sue letter during pendency of lawsuit); *Giardino v. District of Columbia*, 252 F.R.D. 18, 20 (D.D.C.2008) ("Because the EEOC . . . issued a right-to-sue letter prior to the dismissal of his federal employment claims, those claims will not now be dismissed."); *Holmes v. PHI Serv. Co.*, 437 F. Supp. 2d 110, 123 (D.D.C. 2006) ("[T]he plaintiff's failure to exhaust her administrative remedies before bringing this action was cured when the EEOC issued its second right-to-sue letter to the plaintiff . . . encompassing her retaliatory discharge claim."); *see also Peters v. D.C.*, 873 F. Supp. 2d at 181, *Hunter v. D.C. Child & Family Servs. Agency,* 710 F. Supp. 2d 152, 157 (D.D.C. 2010) (where plaintiff failed to allege receipt of right-to-sue letter but District did not contest that plaintiff received the EEOC letter after the filing of the complaint, District's "exhaustion argument is deemed abandoned").

Accordingly, WMATA's Motion for Summary Judgment is denied to the extent that it is intended to dispose of Hunter's claim on the ground that he failed to exhaust administrative remedies.

**B. WMATA's Asserted Non-Retaliatory Basis for Hunter's Termination**

WMATA next argues that Hunter's claim fails because WMATA had a non-retaliatory basis for terminating his employment. Def.'s Mot. at 3–5. Because neither party has adequately briefed this important issue for the Court's consideration, the Court will deny WMATA's motion

8

without prejudice and give the parties an opportunity to file renewed motions for summary judgment.

Title VII claims, including retaliation claims, are evaluated under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006). In a retaliation case, the plaintiff must first "establish a prima facie case of retaliation." *Id.* If the plaintiff meets this burden, "the employer must articulate a legitimate nonretaliatory reason for its action." *Id.* If the employer offers such a reason, "the plaintiff has the ultimate burden of establishing that the reason asserted by the employer is pretext for retaliation." *Id.*

"To establish a prima facie case of retaliation, the plaintiff must present evidence that (1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) the adverse action was causally related to the exercise of [his] rights." *Id.* at 901–02. To prevail in a Title VII case, the plaintiff must eventually make this showing. *See id.*

However, courts "need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*" where (1) "an employee has suffered an adverse employment action," and (2) "an employer has asserted a legitimate, non-discriminatory reason for the decision." *Brady v. Office of Sgt. at Arms, U.S. House of Reps.*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original).

Instead, at the summary judgment stage, the Court ordinarily must determine only whether the employee has produced sufficient evidence to allow a "reasonable jury not only could disbelieve the employer's reasons, but also could conclude that the employer acted, at least in part, for a prohibited reason." *Walker v. Johnson*, 798 F.3d 1085, 1096 (D.C. Cir. 2015). In resolving

this central question, courts look to, among other things, "(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination [or retaliation] that may be available to the plaintiff (such as independent evidence of discriminatory [or retaliatory] statements or attitudes on the part of the employer)." *Hampton v. Vilsack*, 685 F.3d 1096, 1100 (D.C. Cir. 2012) (internal quotation marks omitted).

Recognizing the difficulty in uncovering clear evidence of discriminatory or retaliatory intent, courts approach summary judgment in Title VII discrimination and retaliation cases with "special caution." *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879–80 (D.C. Cir. 1997), *vacated on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (en banc). But the plaintiff is not relieved of his burden to support his allegations with competent evidence. *See Brown v. Mills*, 674 F. Supp. 2d 182, 188 (D.D.C. 2009) (ESH). As in any context in which the plaintiff would bear the burden of proof on a dispositive issue at trial, at the summary judgment stage, the plaintiff bears the burden of production to identify competent evidence of facts showing that there exists a genuine dispute requiring trial. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 324). To carry this burden, the plaintiff must present more than a "mere existence of a scintilla of evidence in support of the [its] position." *Anderson*, 477 U.S at 252. The evidence must be such that "the jury could reasonably find for the [non-moving party].'' *Id.*; *see also Figueroa v. Pompeo*, 923 F.3d 1078, 1087 (D.C. Cir 2011) (applying four-factor analysis when weighing evidence of legitimate, non-discriminatory reasons).

Here, Hunter has produced documents that may be probative of whether WMATA's stated non-retaliatory reason for terminating his employment—his failure to obtain certification within the required time—was the actual reason for its action. For example, Hunter has produced

documents showing that WMATA formally informed him of the certification requirement only eight days after he filed a new complaint alleging retaliation. *See* Pl.'s Ex. 6, ECF No. 19-1, at 1; Def.'s Ex. 2., ECF No. 17-4. He has also produced a document showing that WMATA concluded he was not qualified for the CA II position as of September 2017, but it later placed him into that position in May 2020. *See* Pl.'s Ex. 4, ECF No. 19-1 at 10.

However, the present record and briefing are not adequate to allow the Court to determine whether a reasonable jury could conclude that WMATA's stated reason for terminating Hunter's employment was its actual reason or instead mere pretext. WMATA's argument on this issue spans barely more than a single page. *See* Def.'s Mot., ECF No. 17. And WMATA elected not to file a reply to Hunter's *pro se* Opposition to the Motion. On this record, it appears to the Court that WMATA may be able to produce competent evidence rebutting any adverse inference that a reasonable jury might draw from the documents Hunter has produced, but it has not yet done so. By the same token, Hunter may be able to produce other documents or relevant evidence that may further support his position. *See* Fed. R. Civ. P. 56(c)(1) (providing that the party opposing a motion for summary judgment may show that a fact "is genuinely disputed" by citing "documents, electronically stored information, affidavits or declarations, stipulations . . . or other materials").

Therefore, the Court shall deny without prejudice WMATA's Motion for Summary Judgment to the extent that it is intended to dispose of Hunter's claim on the ground that WMATA had a non-retaliatory alternative reason for terminating his employment. The Court shall give the parties an opportunity to file renewed motions for summary judgment based on this or any other ground not resolved by this Memorandum Opinion and Order.

## IV. CONCLUSION

For the foregoing reasons, WMATA's [17] Motion for Summary Judgment is **DENIED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**. The Motion is **DENIED** as to WMATA's argument based on administrative exhaustion. The Motion is **DENIED WITHOUT PREJUDICE** as to WMATA's argument based on an asserted non-retaliatory alternative reason for the termination of Hunter's employment.

It is further **ORDERED** that the parties may file renewed motions for summary judgment on or before **March 10, 2025**. Responses to such motions shall be filed on or before **March 24, 2025**. Replies in support of such motions, if any, shall be filed on or before **March 31, 2025**.

The Clerk of the Court is respectfully directed to mail a copy of this Memorandum Opinion and Order to the *pro se* Plaintiff at his address of record.

**SO ORDERED.**

Dated: February 18, 2025

*/s/ Colleen Kollar-Kotelly*
COLLEEN KOLLAR-KOTELLY
United States District Judge