## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERNEST HUNTER,<br><br>          Plaintiff,<br><br>     v.<br><br>WASHINGTON METROPOLITAN<br>TRANSIT AUTHORITY,<br><br>          Defendant. | Civil Action No. 22-3552 (CKK) |

## MEMORANDUM OPINION
(March 3, 2026)

Plaintiff Ernest Hunter alleges in this case that his former employer, the Washington Metropolitan Transit Authority ("WMATA"), unlawfully retaliated against him for filing a complaint of discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").[1] *See* Compl., Dkt. No. 1, ¶¶ 51–58.

This Court denied in part and denied without prejudice in part WMATA's initial motion for summary judgment on Mr. Hunter's claim of unlawful retaliation, concluding that the record was not sufficiently developed and briefed to allow the Court to evaluate WMATA's argument that it had a non-retaliatory basis for terminating his employment. *See* Mem. Op. & Order, Dkt. No. 20. WMATA has now filed a renewed motion for summary judgment and Mr. Hunter, proceeding *pro se*, has filed a cross-motion. *See* Def.'s Mot., Dkt. No. 21; Pl.'s Mot., Dkt. No. 23.

---

[1] Mr. Hunter also alleged, in Count II of his Complaint, that WMATA violated the District of Columbia Wage Payment Collection Law, D.C. Code § 32-1301 *et seq.*, and the District of Columbia Wage Theft Prevention Act, 61 D.C. Reg. 10157 (October 3, 2014). *See* Compl., Dkt. No. 1, ¶¶ 59–66. Mr. Hunter later consented to the dismissal of Count II of his Complaint, which WMATA argued was barred because WMATA is an "interstate compact agency" not susceptible to suit under those laws. *See* Def.'s Partial Mot. to Dismiss, Dkt. No. 6; Pl.'s Resp. to Def.'s Partial Mot. to Dismiss, Dkt. No. 7. The Court therefore dismissed Count II. Minute Order (Apr. 25, 2023).

Upon consideration of the parties' submissions,[2] the relevant legal authority, and the entire record, the Court shall **GRANT** Defendant WMATA's [21] Renewed Motion for Summary Judgment and **DENY** Plaintiff Hunter's [23] Cross-Motion for Summary Judgment.

## I. BACKGROUND

Mr. Hunter worked in the Small Business Program Office of WMATA's Procurement and Materials department as a Disadvantaged Business Enterprise ("DBE") Compliance Specialist from May 2013 until October 2017, when WMATA terminated his employment. *See* Def.'s Mot. at 1; Def.'s Statement of Material Facts Not in Dispute ("Def.'s Stmt."), Dkt. No. 21-1, ¶¶ 1, 3.

Mr. Hunter's union filed a grievance regarding his October 2017 termination. *See* Pl.'s Ex., Dkt. No. 19-1; Def.'s Stmt. ¶ 3. After arbitration over that grievance and a ruling in Mr. Hunter's favor, an arbitration board concluded that he should be offered "reinstatement within the bargaining unit to the position of Small Business Analyst or, if mutually agreed to by the parties[,] another position within the bargaining unit." Pl.'s Ex., Dkt. No. 19-1, at 2.

In May 2020, WMATA placed Mr. Hunter into a Contract Administrator II ("CA II") position in its Office of Procurement and Materials ("PRMT"). *See* Def.'s Stmt. ¶ 3. The CA II position requires a "Bachelor's Degree in Business Administration, Engineering, or a related field." *See* Def.'s Ex. 1, Dkt. No. 21-3, at 4. However, the job description provides that "[i]n lieu of a Bachelor's Degree," a combination of a high school diploma or GED and relevant work

---

[2] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:
- Defendant WMATA's Motion for Summary Judgment ("Def.'s Mot."), Dkt. No. 21;
- Plaintiff Hunter's Motion for Summary Judgment ("Pl.'s Mot."), Dkt. No. 23;
- Defendant WMATA's Opposition to Plaintiff Hunter's Motion ("Def.'s Opp'n"), Dkt. No. 25;
- Plaintiff Hunter's Opposition to Defendant WMATA's Motion ("Pl.'s Opp'n"), Dkt. No. 29;
- Defendant WMATA's Reply in Support of its Motion ("Def.'s Reply"), Dkt. No. 28.

In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues pending before the Court. *See* LCvR 7(f).

experience "may be considered." *Id.* The job description further provides that the relevant work experience for a person without a qualifying college degree must include "an additional four (4) years of experience in developing and administering requests for proposals and/or quotations, specifications, scope of work, and different types of contracts and agreements." *Id.* Finally, the job description provides that "[c]ertification from an accredited procurement program . . . must be obtained within two (2) years of hire date and maintained thereafter." *Id.* at 5; *see* Def.'s Stmt. ¶ 5.[3] This certification requirement was added in September 2018. Def.'s Stmt. ¶ 5; *see* Def.'s Ex. 1, Dkt. No. 21-3, at 1, 5.

WMATA had evaluated Mr. Hunter's qualifications to hold the CA II position at least once before, in September 2017; at that time, it found that Mr. Hunter was not qualified for the position. Pl.'s Ex., Dkt. No. 23-1 at 6. Mr. Hunter alleged both in the Charge of Discrimination he filed with the EEOC and in his complaint in this case that he still lacked the "prerequisite experience" for the CA II position at the time he was placed in the position in 2020. *See* Pl.'s Charge of Discrimination, Dkt. No. 17-8 at 14–23; Compl. ¶ 43.

On March 26, 2021, Mr. Hunter filed a grievance alleging that in the 10 months since his reinstatement in May 2020, his managers had not been assigning him work, had failed to provide him a mid-year review, and had improperly referred him to WMATA's Employee Assistance Program ("EAP") without his request or consent. *See* Pl.'s Exs., Dkt. No. 19-1 at 12. About two weeks later, on April 7, 2021, Mr. Hunter filed a formal discrimination complaint with WMATA's Office of Equal Employment Opportunity, in which he alleged that WMATA took these actions

---

[3] In his cross-motion for summary judgment, Mr. Hunter argues that the job description indicates that the certification requirement is marked "Preferred" or "N/A." *See* Pl.'s Mot. at 4. However, this interpretation of the job description is unreasonable and lacks any support in the record. *See See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009). Understood in context, the word "Preferred" is clearly a section heading, and "N/A" indicates that there are no qualifications in that category—that is, that there are no "preferred" qualifications for the CA II role. *See* Def.'s Ex. 1, Dkt. No. 21-3, at 5.

in retaliation for his prior complaint to the Equal Employment Opportunity Commission ("EEOC"). *See id.* at 14–15. WMATA later investigated these allegations and concluded on June 4, 2021, that they were "unsupported." Pl.'s Opp'n Ex. 5, Dkt. No. 29 at 12.

On April 15, 2021, eight days after Mr. Hunter filed his discrimination complaint with WMATA's Office of Equal Employment Opportunity, a WMATA executive named T. Suzette Moore sent a memorandum to "All PRMT Contracting Personnel," including Mr. Hunter, describing the certification requirement that applied to Mr. Hunter's position and several other positions in the same department. *See* Def.'s Ex. 2., Dkt. No. 21-4. This memorandum stated that individuals in covered positions must "obtain . . . certification within two (2) years of hire as established in their associated job description." *Id.* at 1. It also stated that "[i]ndividuals who fail to obtain and maintain certification will be subject to termination." *Id.* at 2.

Ms. Moore later sent a memo directly to Mr. Hunter on June 1, 2021, restating the policy requirement and advising him that his position was "an applicable position that requires certification/recertification" and that he would be required to obtain certification by May 25, 2022, in order to maintain his position. Def.'s Ex. 3, Dkt. No. 21-5; Decl. of T. Suzette Moore ("Moore Decl."), Dkt. No. 21-2, ¶ 8. Ms. Moore also sent similar letters to three other PRMT employees on the same day. Def.'s Ex. 4, Dkt. No. 21-6.[4]

On March 14, 2022, Ms. Moore emailed Mr. Hunter and reminded him that he needed to obtain the required certification by May 25, 2022, or he would be terminated, attaching a copy of the earlier policy memorandum to her email. *See* Def.'s Ex. 5, Dkt. No. 21-7; Moore Decl. ¶ 9; Def.'s Stmt. ¶ 9.

---

[4] Mr. Hunter objects that WMATA raised this fact for the first time in its renewed motion for summary judgment. *See* Pl.'s Resp. to Def.'s Stmt., Dkt. No. 29 at 15–16. However, Mr. Hunter has not produced any evidence to dispute this fact or argued that WMATA improperly withheld relevant evidence from him. Accordingly, the fact is properly considered undisputed. *See* Fed. R. Civ. P. 56(c).

Mr. Hunter did not become certified, and WMATA terminated his employment on October 7, 2022. *See* Def.'s Ex. 6, Dkt. No. 21-8.

Mr. Hunter filed this action in November 2022, alleging that WMATA had unlawfully retaliated against him for complaining about workplace discrimination and unlawful retaliation. *See generally* Compl., Dkt. No. 1, ¶¶ 51–58. In his Complaint, Mr. Hunter contends that WMATA set him up to fail by placing him in the CA II position, despite knowing that he lacked the requisite certification and experience. *See* Compl. ¶ 57. He contends that he was not assigned work in the new position, *id.* ¶ 41, that he filed a complaint about his lack of work, *id.* ¶ 42, and that Ms. Moore only informed him about the certification requirement after he filed that complaint, *id.* ¶ 43.

WMATA moved for summary judgment on Mr. Hunter's retaliation claim, which this Court denied in part and denied without prejudice in part. *See* Mem. Op. & Order, Dkt. No. 20. WMATA has now filed a renewed motion for summary judgment and Mr. Hunter, proceeding *pro se*, opposes WMATA's motion and has filed a cross-motion. *See* Def.'s Mot., Dkt. No. 21; Pl.'s Mot., Dkt. No. 23; Pl.'s Opp'n, Dkt. No. 29. WMATA opposes Mr. Hunter's cross-motion. *See* Def.'s Opp'n, Dkt. No. 25.

In his cross-motion for summary judgment, Mr. Hunter adds two new allegations, not mentioned in his Complaint or his underlying EEOC Charge of Discrimination, that he argues support his claim that WMATA unlawfully retaliated against him. *See* Pl.'s Mot. at 4–5; *cf.* Compl. ¶ 56 (alleging other adverse actions); Charge of Discrimination, Dkt. No. 25-1 (same). First, Mr. Hunter alleges that in April 2021, his supervisor required him to provide documentation from a medical provider in connection with his use of sick leave, which he alleges was irregular. *See* Pl.'s Mot. at 4; Pl.'s Exs. 5–6, Dkt. No. 23-1 at 17–18. Second, Mr. Hunter alleges that in March 2022, he sent an email to WMATA's then-Executive Vice President for Internal Business

Operations, Diana Rosborough, to share his complaint about being placed in a role requiring a certification he did not possess. *See* Pl.'s Mot. at 5; Pl.'s Exs. 9–10, Dkt. No. 23-1 at 22–23.

The parties' motions for summary judgment are now ripe for decision.

## II. LEGAL STANDARD

Summary judgment should be granted to the movant if the pleadings, the discovery materials in the record, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

To withstand a motion for summary judgment, the non-moving party must identify a genuine issue of material fact. "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Id.* at 255.

However, the party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). To demonstrate a genuine issue, the opposing party must "cit[e] to particular parts of materials in record, including depositions, documents, electronically stored information, affidavits or declarations, [or] stipulations." Fed. R. Civ. P. 56(c)(1).

When parties file cross-motions for summary judgment, the court considers each motion separately, in the light most favorable to the non-moving party, and determines whether each motion satisfies the standards of Rule 56. *See Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857

F.3d 939, 952 (D.C. Cir. 2017) (noting that a court considering cross-motions for summary judgment "must accord both parties the solicitude owed non-movants").

On a motion for summary judgment, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

### III. ANALYSIS

WMATA is entitled to summary judgment on Mr. Hunter's retaliation claim because Mr. Hunter has failed to produce evidence sufficient to allow a reasonable fact-finder to conclude that WMATA's stated reason for terminating his employment was pretextual.

To prevail on a claim of retaliation under Title VII, a plaintiff must show (1) that he "opposed a practice made unlawful by Title VII," (2) that his employer "took a materially adverse action against him," and (3) "the employer took the action 'because' the employee opposed the practice." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012) (quoting 42 U.S.C. § 2000e-3(a)). A "materially adverse" employment action is one that "could well dissuade a reasonable

7

worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  To establish that an employer acted "because" the employee engaged in a protected activity, "the employee must proffer evidence from which a reasonable jury could infer the employer's retaliatory intent." *McGrath*, 666 F.3d at 1387; *Montgomery v. Chao*, 546 F.3d 703, 707 (D.C. Cir. 2008).

Courts evaluate Title VII claims based on circumstantial evidence, including retaliation claims, under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006); *Montgomery*, 546 F.3d at 706.  In a retaliation case, the plaintiff must first "establish a prima facie case of retaliation."  *Holcomb*, 433 F.3d at 901.  If the plaintiff meets this burden, "the employer must articulate a legitimate nonretaliatory reason for its action."  *Id.*  If the employer offers such a reason, "the plaintiff has the ultimate burden of establishing that the reason asserted by the employer is pretext for retaliation."  *Id.*

However, courts "need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*" where (1) "an employee has suffered an adverse employment action," and (2) "an employer has asserted a legitimate, non-discriminatory reason for the decision." *Brady v. Office of Sgt. at Arms, U.S. House of Reps.*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original).

Instead, at the summary judgment stage, the Court ordinarily must determine only whether the employee has produced sufficient evidence to allow a "reasonable jury not only could disbelieve the employer's reasons, but also could conclude that the employer acted, at least in part, for a prohibited reason." *Walker v. Johnson*, 798 F.3d 1085, 1096 (D.C. Cir. 2015).  In resolving this central question, courts look to, among other things, "(1) the plaintiff's prima facie case; (2)

any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination [or retaliation] that may be available to the plaintiff (such as independent evidence of discriminatory [or retaliatory] statements or attitudes on the part of the employer)." *Hampton v. Vilsack*, 685 F.3d 1096, 1100 (D.C. Cir. 2012) (internal quotation marks omitted).

As in any context in which the plaintiff would bear the burden of proof on a dispositive issue at trial, at the summary judgment stage, the plaintiff bears the burden of production to identify competent evidence of facts showing that there exists a genuine dispute requiring trial. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 324). To carry this burden, the plaintiff must present more than a "mere existence of a scintilla of evidence in support of the [its] position." *Anderson*, 477 U.S at 252. The evidence must be such that "the jury could reasonably find for the [non-moving party].'' *Id.*; *see also Figueroa v. Pompeo*, 923 F.3d 1078, 1087 (D.C. Cir 2011) (applying four-factor analysis when weighing evidence of legitimate, non-discriminatory reasons). Ultimately, "courts are without authority to 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" *Waterhouse v. District of Columbia*, 298 F.3d 989, 995 (D.C. Cir. 2002) (quoting *Fischbach v. Dist. of Columbia Dep't of Corr.,* 86 F.3d 1180, 1182 (D.C. Cir. 1996)).

Here, WMATA proffers that it terminated Mr. Hunter's employment because he failed to satisfy a certification requirement of the CA II position that Mr. Hunter voluntarily accepted as part of the resolution of his prior arbitration. *See* Def.'s Stmt. ¶ 10; Moore Decl. ¶ 10. That non-retaliatory justification supports the award of summary judgment in WMATA's favor.

Mr. Hunter disputes WMATA's explanation, arguing that it terminated him in retaliation for the protected activity of filing a complaint about being denied work after his reinstatement in

2020.  *See* Pl.'s Ex. 13 ("Hunter Dep."), Dkt. No. 23-1 at 28–57, at 15:1–9.  In support of this contention, Mr. Hunter proffers his own testimony that WMATA and Ms. Moore "set [him] up to fail" by placing him into a position it knew that he was not qualified to hold.  *See* Hunter Dep. at 11:16–19; *see also id.* at 14:17–21.  He also cites the fact that, in September 2017, WMATA had found him to be unqualified for the position into which he agreed to be reinstated in March 2020. *See* Pl.'s Exs., Dkt. No. 23-1 at 6.  Finally, he proffers that he received notice that the relevant certification requirement applied to his position for the first time on June 1, 2021, shortly before WMATA notified him that it had concluded its investigation of the formal complaint of retaliation he filed in April 2021.  *See* Pl.'s Mot., Dkt. No. 23, at 5; Pl.'s Ex. 7, Dkt. No. 23-1 at 23-1.

However, Mr. Hunter has not offered any evidence that WMATA applied the certification requirement differently to him than to other similarly situated employees.  *Cf. Holmes v. Washington Metro. Area Transit Auth.*, 723 F. Supp. 3d 1, 26 (D.D.C. 2024) (JEB) (noting that comparator evidence is "the most commonly employed method of demonstrating that an employer's explanation is pretextual").  On the contrary, WMATA has proffered unrebutted evidence that it sent a notice to "All PRMT Contracting Personnel" describing the certification requirement that applied to Mr. Hunter's position and several other positions in the same department.  *See* Def.'s Ex. 2., Dkt. No. 21-4.  Later, on the same day on which WMATA personally notified Mr. Hunter that he needed to satisfy the certification requirement or risk termination, it sent nearly identical notices to three other similarly situated employees.  *See* Def.'s Ex. 4, Dkt. No. 21-6.  Mr. Hunter has not introduced any evidence that WMATA later waived the requirement for any other employee.  The absence of any evidence that Mr. Hunter was treated differently than similarly situated employees cuts against his argument that a reasonable jury could find WMATA's explanation for his termination to be pretextual.

A further obstacle to Mr. Hunter's retaliation claim is that he has not introduced any evidence that Ms. Moore—the official who decided to terminate his employment—was personally aware of his April 2017 complaint. "[T]o establish the requisite causal nexus between the protected activity and the employer's materially adverse action, a plaintiff must demonstrate by direct or circumstantial evidence that the employer had actual knowledge of the protected activity and took adverse action against him because of it." *Brisbon v. Tischner*, 639 F. Supp. 3d 164, 184–85 (D.D.C. 2022) (RBW) (quoting *Sledge v. District of Columbia*, 63 F. Supp. 3d 1, 19 (D.D.C. 2014) (KBJ)), *aff'd,* No. 23-5007, 2023 WL 5162363 (D.C. Cir. Aug. 9, 2023). Mr. Hunter contends that Ms. Moore must have known about his complaint because she supervised each of the managers whom he alleged had failed to give him meaningful work. *See* Pl.'s Opp'n at 3. However, "an employee cannot survive summary judgment if a jury can do no more than 'speculate' that [his] employer knew of [his] protected activity." *Morris v. McCarthy*, 825 F.3d 658, 674 (D.C. Cir. 2016) (*Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011)). The absence of evidence that Ms. Moore knew about Mr. Hunter's complaint further narrows the grounds that may be available to support a finding that WMATA's explanation was pretextual.

Contrary to Mr. Hunter's arguments, the timing of WMATA's April 2021 and June 2021 notices about the certification requirement for Mr. Hunter's position does not support a reasonable inference of retaliation. *See* Pl.'s Mot. at 5. Each of these notices came from Ms. Moore, and as the Court has just explained, there is no evidence in the record that Ms. Moore knew about Mr. Hunter's April 2021 complaint. Moreover, "temporal proximity alone is not enough to prove pretext." *Crowley v. Perdue*, 318 F. Supp. 3d 277, 289 (D.D.C. 2018) (APM). To "defeat the presumption that the [employer's] proffered explanations are genuine" and withstand a motion for summary judgment, an employee must offer "positive evidence beyond mere proximity."

*Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007).  If the rule were otherwise, "then protected

activities would effectively grant employees a period of immunity, during which no act, however

egregious, would support summary judgment for the employer in a subsequent retaliation claim."

*Id.*  Accordingly, the mere fact that Mr. Hunter received direct notice of the certification

requirement for his position close in time to his April 2021 complaint does not support an inference

that WMATA's stated reasons for its actions are a pretext for unlawful retaliation.

For the same reason, the timing of Mr. Hunter's message to Ms. Rosborough in

March 2022 does not support a reasonable inference of retaliation.  At the threshold, it is doubtful

that Mr. Hunter could withstand summary judgment by relying on evidence of protected activity

that is not cited in either his EEOC Charge of Discrimination or his complaint.  *Cf. Park v. Howard*

*Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (holding that a Title VII claim must be reasonably related

to the allegations presented in an EEOC charge).   Even if he could do so, there is no evidence in

the record that Ms. Moore knew of Mr. Hunter's complaint to Ms. Rosborough, and several months

passed between the complaint and Mr. Hunter's eventual termination.  There is no other evidence

in the record linking the two events.  On this record, a reasonable jury could not infer that

WMATA's stated reason for terminating him was a pretext for unlawful retaliation for his March

2022 complaint to Ms. Rosborough.

Mr. Hunter's allegations that his supervisors did not provide him with enough work and

required him to provide documentation in connection with his use of sick leave do not support his

claim of retaliation, either.[5]  Mr. Hunter has not alleged in this case that any of these actions was,

---

[5] The Court assumes, without deciding, that Mr. Hunter's allegation about the requirement to provide additional
documentation in connection with his use of sick leave is properly before the Court as it evaluates whether Mr. Hunter
has proffered evidence from which a reasonable jury to infer a retaliatory motive.  *Cf. Crawford v. Duke*, 867 F.3d
103, 108 (D.C. Cir. 2017) (explaining that, at least at the motion to dismiss stage, courts consider supplemental
material filed by *pro se* litigants if doing so helps clarify to the plaintiff's claims).  However, as WMATA notes,
allegations outside the scope of a properly filed Charge of Discrimination generally cannot form the basis for a Title
VII claim.  *See* Def.'s Opp'n, Dkt. No. 25 at 2 n.2, *Park*, 71 F.3d at 907.

on its own, sufficiently adverse to constitute actionable retaliation.  *See* Compl. ¶ 56; *cf. Burlington N.*, 548 U.S. at 57 (holding that an employment action is "adverse" if it "could well dissuade a reasonable worker from making or supporting a charge of discrimination").  Mr. Hunter also has not introduced any evidence linking these actions to WMATA's ultimate decision to terminate him for failure to obtain a required certification—a reason that does not depend on Mr. Hunter's performance or attendance record.  On this record, Mr. Hunter's allegations about lack of work and being required to provide documentation to use sick leave do not support a reasonable inference that WMATA's stated reason for his termination was pretextual.

Finally, Mr. Hunter's testimony that he believed WMATA had "set [him] up to fail" by placing him in the CA II role is not sufficient to support his claim of retaliation in this case.  *See* Hunter Dep. at 11:16–19.  WMATA's consistently stated reason for terminating his employment is that he failed to obtain a certification that was required for his position.  *See* Def.'s Mem. at 3–4; Def.'s Ex. 6, Dkt. No. 21-8.  Although Mr. Hunter suggests that WMATA's other conduct shows that it did not intend for him to succeed in his new position, he has not introduced evidence from which a reasonable jury could conclude that WMATA's stated reason was pretextual.    As WMATA correctly notes, Mr. Hunter voluntarily accepted the CA II position, and WMATA sent him a personal reminder about the certification requirement for this position nearly a full year before the deadline to obtain certification passed.  *See* Def.'s Opp'n at 1–2.  WMATA sent three other employees similar reminders, showing both that WMATA expected others to comply with this requirement and that Mr. Hunter was not the only employee who did not have a necessary certification at the time of being hired into a position that required one.  *See* Def.'s Ex. 4, Dkt. No. 21-6.  On this record, Mr. Hunter's own testimony is insufficient to create a genuine dispute of material fact about WMATA's motive for firing him.

In sum, because Mr. Hunter has not proffered evidence from which a reasonable jury could infer that WMATA acted with "retaliatory intent" when it terminated his employment, WMATA is entitled to summary judgment. *See McGrath*, 666 F.3d at 1387. The Court shall therefore grant WMATA's motion and deny Mr. Hunter's cross-motion.

## IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT** WMATA's [21] Renewed Motion for Summary Judgment and **DENY** Plaintiff Hunter's [23] Cross-Motion for Summary Judgment. An appropriate Order accompanies this Memorandum Opinion.

**Dated:** March 3, 2026

COLLEEN KOLLAR-KOTELLY
United States District Judge

14